[No. 7353.]

## WINCHESTER V. WALKER ET AL.

1. PARTIES—*Substitution of Parties.* Where, upon application of one claiming to be the assignee of the cause of action, to be substituted as plaintiff, the assignment is disputed, he should be required to intervene. To substitute him on mere motion, excluding the nominal plaintiff, is a denial of the right secured by sec. 6 of art. II of the Constitution. (24.)

The provisions of sec. 15 of the code have no application where the fact of the transfer is in issue. (24, 25.)

2. —— *Necessary.* Where the assignment of a chose in action is not absolute, the assignor is a necessary party to an action thereon. (25.)

3. ASSIGNMENT—*Of Chose in Action as Collateral Security—Effect.* The assignor is still entitled to prosecute an action thereon. (28.)

So, where a plaintiff in a pending action assigns merely the money to be recovered therein, the assignee may intervene in the action of the assignor, or may prosecute his own action. (25.)

4. —— *Where assignee claims by assignment from a former assignee of plaintiff,* he must give affirmative evidence of authority for such second assignment. (27, 28.)

*Error to Denver District Court.* Hon. GEO. W. ALLEN, Judge.

Mr. HENRY J. HERSEY, for plaintiff in error.

Mr. IRA HARRIS, Messrs. SCHUYLER & SCHUYLER, Mr. RALPH HARTZELL, for defendants in error.

Mr. JUSTICE SCOTT delivered the opinion of the court.

This action was instituted by the plaintiff in error to recover upon an injunction bond in the sum of fifty thousand dollars, executed by the defendant in error, Herbert Warne, as principal, and the defendants in error, H. L. Shepherd, W. F. Rock and J. J. Weicher, as sureties, in a suit theretofore pending between Warne as plaintiff, and the plaintiff in error, Winchester, and others, as defendants.

The damages are alleged to have been in the sum of $196,000, but the prayer for relief was limited to the sum of $50,000, the amount named in the bond.

The complaint was filed on the 21st day of November, 1903. The defendants, Shepherd, Rock and Weicher, thereafter filed their motion for a stay of proceedings in the cause, until such time as Warne, the principal on the bond, should be served with process, or otherwise brought into court. This motion, over the objection of the plaintiff, was granted, and no further proceeding had in the case, until April 19th, 1907, when the defendant, Warne, filed his verified answer to the complaint. On July 5th, 1907, the remaining defendants filed their demurrer to the complaint. While this demurrer was pending, and on the 18th day of November, 1907, the defendant in error, Walker, who was then not a party to the action, filed a motion to be substituted as party plaintiff, instead of the then plaintiff, Winchester, and as grounds of said motion alleged that on the 12th day of October, 1907, he, the said Walker, acquired by virtue of a purchase at public sale, all the right, title and interest of the plaintiff, Winchester, in and to the injunction bond sued on, and all his rights thereunder.

This motion was resisted by Winchester, and was supported and controverted by conflicting affidavits. The motion was sustained by the court, and Walker was thus made the sole plaintiff, and Winchester displaced and denied a right as party to the case. This ruling of the court is the principal error relied on.

Later, and on motion of Warne, the answer theretofore filed by him was permitted to be withdrawn, and an order entered adjudging that the said Warne had not submitted himself to the jurisdiction of the court.

The remaining defendants thereafter filed their joint answer to the complaint, and upon the trial of the cause, verdict and judgment was rendered in favor of Walker, the substituted plaintiff, in the sum of two thousand dollars. Prior to the submission of the cause to the jury, counsel for Winchester, learning that the cause was proceeding, appeared before the court and moved the court to vacate and

set aside the order of substitution of parties plaintiff, and also to vacate and set aside an order of the court denying the application of Winchester, made before the substitution, for a commission to take the depositions of O. O. Whitted and said Walker, and in directing the clerk of the court not to issue such commissions. This motion was denied by the court.

Inasmuch as we have concluded that the cause must be reversed, because of the error of the trial court in granting the order of substitution of parties plaintiff, we do not deem it necessary, nor do we feel it can serve any useful purpose to discuss or determine any of the many other assignments of error.

The claim of Walker to be the only party in interest as plaintiff in the case arises out of an assignment of claim under the injunction bond, given by Winchester to the First National Bank of Denver, as additional security for the payment of the joint promissory notes of Winchester and one A. M. Stevenson, in the total sum of approximately $40,000. This assignment of interest is dated October 26th, 1903, and after setting forth the fact of the execution of the injunction bond and the proceeding connected with it, proceeds as follows:

"And, Whereas, said Josiah Winchester is also about to commence a certain other action in said court against said Warne, Weicher and one A. E. Carlton for damages which he suffered on account of said action of said Herbert Warne against him; and, Whereas, said Winchester is indebted to The First National Bank of Denver, Colorado, in a large amount of money; Now, Therefore, in consideration of the sum of one dollar ($1.00) to the said Winchester by said First National Bank of Denver, Colorado, in hand paid, the receipt of which is hereby acknowledged, the said Josiah Winchester by these presents hereby sells, assigns, transfers and sets over unto said First National Bank of Denver, Colorado, as additional collateral and security for the notes

due to said bank and signed by A. M. Stevenson and himself, whatever sums of money that he may recover in said action and all his right, title and interest in and to said injunction bond and the right of recovery thereon and all his right, title and interest in the other damage suit herein mentioned."

It appears that afterward this assignment of interest in the bond or rights under it was assigned by the bank to said A. M. Stevenson, and by him to one O. O. Whitted, and under a public sale transferred by Whitted to Walker.

It is said by Winchester in his affidavit that the original assignment executed by him was altered after its execution and delivery; that it was drawn by A. M. Stevenson in the form substantially as now presented, but that when it was presented by Winchester to E. F. Richardson, his attorney, it was altered by Richardson before signing. The contention being that, as delivered, it provided for the assignment of whatever sums of money Winchester might recover under the bond, and was not an assignment of all his right, title and interest in the bond, or the right to recover under it. This statement is corroborated by the affidavit of Richardson.

It then appears from the Winchester affidavit that the notes to the bank were afterward fully paid by Stevenson, and that the bank assigned its rights under such securities to Stevenson. Also, that more than $25,000 of the indebtedness to the bank, for which this assignment was given as additional and collateral security, was the personal debt of Stevenson.

The Winchester affidavit also sets forth a portion of the verified answer of Stevenson in another action then pending, wherein Winchester was plaintiff, and Stevenson was defendant, containing the following:

"That for the purpose of avoiding absolute financial ruin, this defendant (meaning the said Archibald Stevenson) was required to, and did, on or about the fifteenth day

of October, A. D. 1905, pay to said bank (meaning the First National Bank of Denver, Colorado) the sum of forty-two thousand ($42,000) dollars, which said amount, including the amount due and owing said bank from said plaintiff and defendant on said notes (meaning the joint notes of said Winchester and Stevenson hereinabove referred to), and also including the sum of four thousand fifty ($4,050) dollars, which said bank was required to and did pay as an assessment on one hundred sixty thousand (160,000) shares of stock of the Doctor Jack-Pot Consolidated Mining Company. That the defendant had to borrow all of said money to make said payments, and when the same was made he became and was subrogated to whatever interests said plaintiff had in the securities pledged to said bank for the payment of said notes, and at the time said defendant made said payment he caused said securities to be transferred and assigned as collateral security to the person who loaned him said money."

There also appears in the record the affidavit of Thomas Keeley, vice president of the First National Bank, giving his version of the transaction as follows:

"That on and prior to the twenty-sixth day of October, A. D. 1903, Josiah Winchester and Archibald M. Stevenson were jointly indebted to said bank in a sum exceeding forty thousand ($40,000) dollars, which said indebtedness was evidenced by the several joint promissory notes of said Archibald M. Stevenson and Josiah Winchester, payable to the order of said bank; that, among other things, there were pledged to said bank as collateral security for the payment of said several notes four hundred thirty thousand (430,000) shares of the capital stock of the Doctor Jack-Pot Consolidated Gold Mining Company, and also fifty thousand (50,000) shares of the capital stock of the Mary Jane Mining and Milling Company, and also two hundred ninety-three thousand (293,000) shares of the capital stock of the Advance Gold Mining, Bonding and Leasing Company,

all of which said capital stock, affiant is informed and believes, was the property of said Josiah Winchester, and that said Archibald M. Stevenson had no interest whatsoever therein; that in addition to said collateral security, Emma Winchester, who was, and is, the wife of the said Josiah Winchester, mortgaged to said Thomas Keely, for the use of the bank, lots numbered twelve, thirteen and fourteen in block numbered thirty-seven in H. C. Brown's addition to Denver, as security for the payment of the aforesaid several promissory notes of said Winchester and Stevenson; that in addition to the foregoing, the said bank required of said Winchester that he, the said Winchester, should pledge to said bank as additional security for the payment of said notes any sums of money that he might recover in two certain actions then pending or about to be begun, one of them being this action and the other being an action against A. E. Carlton, J. J. Weicher, and Herbert Warne, for damages, and that in accordance with the requirements of said bank, the said Josiah Winchester, on or about said twenty-sixth day of October, A. D. 1903, made, executed and delivered to the said bank a certain instrument of writing, wherein and whereby the said Winchester did assign to said bank as collateral security for the payment of said promissory notes any sums of money that he might recover in the said actions or either of them; that the said bank did not require or desire that the said Winchester should pledge to it his rights of action, causes of action, or anything other than the sums of money which he might recover in said suits, and while this affiant does not recollect the exact language of the said instrument of writing, this affiant has always understood and believed that the said causes of action and rights of action were not assigned to said bank by said Josiah Winchester, and that the intent and purpose of the said written instrument was to pledge the said sums of money to be recovered in said causes of action only; that thereafter, and on and about the twelfth day of Octo-

ber, A. D. 1905, the said Stevenson, in the customary place of business of said bank, paid and delivered to this affiant for the said bank, forty-two thousand ($42,000) dollars in currency for the cancellation, payment and discharge of the said several joint promissory notes of said Winchester and said Stevenson; that at the time of making said payment, said Stevenson said to affiant, substantially, that he, the said Stevenson, had been obliged to mortgage everything he had on earth to raise and procure the said sum of money; that thereupon affiant, in behalf of said bank, cancelled and discharged the said notes and said indebtedness and delivered the same, together with all the said above described capital stock of said several corporations, to the said Stevenson, and also in behalf of said bank endorsed upon the said instrument of writing made and executed by the said Winchester on or about the twenty-sixth day of October, A. D. 1903, a further instrument of writing, in words and figures as follows, to-wit:

'For and in consideration of the sum of one dollar to it in hand paid, and other valuable considerations received by The First National Bank of Denver, Colorado, it hereby sells, assigns, transfers and set over unto A. M. Stevenson and his assigns all the right, title and interest which said bank now has or may hereafter acquire of any kind or nature in and to the two causes of action and actions at law and each of them mentioned in the foregoing instrument in writing, and in and to recovery made thereon or thereunder.   Dated Denver, Colo., Oct. 12th, A. D. 1905. First National Bank of Denver, Colo., by Thomas Keely, (SEAL)                                    Vice Pres. F. G. Moffat, Sec.

That all of said last described instrument of writing, save and except the signature and seal, was dictated and composed by the said Stevenson.' "

Afterward Keely made another affidavit, which he denominates "a further and additional statement," in which

he does not deny anything that was said in the first affidavit, but says that his statement as to ownership of the mining stocks was based on what Winchester had told him. That Stevenson paid him $42,000 in currency in full settlement of the notes of Winchester and Stevenson. That a man named Whitted was present and introduced to him, and that Stevenson claimed to represent him; that he assigned to Whitted 430,000 shares of the Doctor Jack-Pot Consolidated Mining Company, which had been pledged to secure the said notes; that he also executed to said Whitted a warranty deed for the property theretofore pledged by the wife of Winchester as a part of the security for the notes, and delivered such deed to Stevenson and assigned and delivered the remaining mining stocks to Stevenson.

We do not determine as to who was the owner at the time of any interest in this suit, as between Winchester and Walker, but have recited what we deem sufficient to show that there was presented a clear issue of both law and fact as to whether Walker was the owner of all or any part of the claim for recovery in this action.

This issue was one to be tried in the regular course of procedure, and should not have been determined by the court upon the motion to substitute parties plaintiff. It is plain that Walker's claim was adverse to that of Winchester, and likewise to the interests of the defendants in the action. The procedure in such a case, provided by the code, is by petition in intervention, which should have been followed in this case.

The defendants in error contend that the order of the court granting substitution of parties plaintiff was authorized under sec. 15 of the code:

"Sec. 15. An action shall not abate by the death or other disability of a party or by the transfer of any interest therein if the cause of action survive or continue. In case of the death or other disability of a party, the court, on motion, may allow an action to be continued by or against

his representative or successor in interest.   In case of any
other transfer of interest, the action may be continued in
the name of the original party, or the court may allow the
person to whom the transfer is made to be substituted in the
action."

Counsel cite many cases in which such substitution of
parties has been allowed.   But no case is cited, and we know
of none, wherein such substitution has been permitted,
where an issue was presented involving the very fact of
transfer or ownership of interest.

"Where the assignment is not absolute, or the assignor
retains an interest in the chose, or there is a controversy
between the assignor and the assignee touching the assign-
ment, or there remains a liability on part of the assignor,
the assignor should be made a party to the bill brought by
the assignee to enforce the chose assigned."   4 Cyc. 103.

If there is a controversy between the assignor and as-
signee touching the assignment, the court will direct the
assignor to be made a party for the protection of all; other-
wise he need not be a party.   *Moray v. Forsythe, Walker,*
Ch. 465; *Miller v. Bear et al.,* 3 Paige (N. Y.) 465.

In support of the text in 4 Cyc., *supra,* that where the
assignment of the chose is not absolute, the assignor is a
necessary party, it is said in *Miller v. Henderson,* 10 N. J.
Eq. 323:

"Abrahams did not assign his interest in the agreement
absolutely to Jermime Chambers.   It was a conditional as-
signment, and he retained an interest in the property as-
signed.   Where the mortgagee assigns the mortgage abso-
lutely to a third person, it is not necessary that the
mortgagee should be a party to a suit for the foreclosure
and sale of the mortgaged premises.   But if the assignment
is not absolute, but the mortgagee retains an interest in
the mortgaged security, then he is a necessary party, be-
cause he is interested in the suit, and particularly in taking
the account of what is due on the security."   See also *Land*

*Co. v. Elkins* (C. C.), 20 Fed. 545; *Schilling v. Mullen,* 55 Minn. 122, 56 N. W. 586, 43 Am. St. 435.

It was held in *Longbine v. Piper,* 70 Pa. St. 378, that one acquiring the title cannot oust the plaintiff on the record against his will. Construing a statutory provision similar to our sec. 15 of the Code, the court said:

"The words of the Act of 1850 are therefore not mandatory, but permissive only. 'The writ shall not be affected thereby (to-wit, by the change of title), but the purchaser or assignee may prosecute said action.' But he is not bound to prosecute the suit brought by the former owner; he may sue out his own writ to recover the premises, and for this may have good reasons. But when he asks to oust the plaintiff from his action and compel him to retire from his suit, a very different question arises. The plaintiff may have rights as he believes, which entitle him to prosecute his action to a termination for his own benefit. He may deny wholly the divestiture of title claimed by the person alleging himself to be the purchaser, and entitled to substitution. For instance, in the present case Longbine's title was not sold at sheriff's sale, but the title of W. W. Piper, his grantor. Now, what is there to prevent Longbine from denying the effect of the sale as a transfer of his title? He may be able to show that the land was not, at the time of sale to him, subject to the lien of the judgment, or that it had been released or discharged therefrom, or that he has some other defense good in equity or law. It is no answer to this to say the fact or facts alleged by him are not true, and this has been found by the court; for the effect of such a position is to deny to him his constitutional right of trial by jury, and to make the court alone the tribunal to determine the facts. The power to award an issue to determine the truth of his allegations does not mend the matter, for this power is discretionary.

By the eleventh section of the ninth article of the constitution, all courts shall be open, and every man for injury

done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. The remedy is a parcel of the right; and laws, therefore, that so change the nature and extent of existing remedies, as materially to impair the right, are a violation of the right. *Greed v. Biddle,* 8 Wheat 17 (5 L. Ed. 547) ; *Bronson v. Kinzie,* 1 Howard 317 (11 L. Ed. 143). Nor does the prosecution of the plaintiff's action prevent the purchaser or assignee from bringing his own action and prosecuting it to verdict or judgment. He is, therefore, not denied his remedy. Now, surely we are not to interpret the Act of 1850 so as to make it an instrument of injustice, and to enable a party claiming title adversely to the plaintiff in the action to supplant him *nolens volens."*

To the same effect is the case of *Smith v. Harrington,* 3 Wyo. 503, 27 Pac. 803.

As gathered from the affidavits in this case, it is not disputed but that the assignment was not absolute, but, on the contrary, it was given solely as collateral security; nor is it disputed that all the security given to indemnify the bank was the property of Winchester and his wife.

There is no evidence as to the value of such securities, nor that they were insufficient aside from the assignment in controversy, to discharge the entire debt. There is no showing as to the power or authority of the bank to assign the stocks and interest in this cause of action, or to execute a deed for the real property of the wife of Winchester. Winchester claims that more than $25,000 of the debt was the personal debt of Stevenson, while Stevenson admits that $12,000 was his personal debt. Both Stevenson and Keely say that Stevenson paid the debt in currency to the bank, and the latter says that, acting for the bank, he cancelled and discharged the notes and the indebtedness. There is no contention that the bank sold the notes and securities.

There is nothing appearing in the affidavits to show that the bank had any right to assign them.

It will be noticed that in addition to the affidavit of Winchester, the banker, Keely in his affidavit testifies as to his construction of the assignment as follows: "He, Winchester, did assign to said bank as collateral security for the payment of said promissory notes any sums of money that he might recover in said actions; that the said bank did not require or desire that said Winchester should pledge to it his rights of action, causes of action or anything other than the sums of money which he might recover in said suits." If this be true, then Winchester's right to maintain the action is clear.

Winchester's claim to an interest in the cause of action raises an issue which he is entitled to have tried as is any other issue in the suit. The complaint of Winchester sufficiently states a cause of action for the recovery of fifty thousand dollars. He was denied the right to participate in the trial. The recovery was for two thousand dollars. The record shows that both Walker and Whitted were non-residents of the state, and that neither personally participated in the trial.

Who can say that if Winchester had been permitted to push his claim, the judgment would not have been for the full amount of his demand, or at least for a much larger amount than was recovered. The order of the court was upon its face a denial of the constitutional right guaranteed under sec. 6 of art. II of the Constitution.

The judgment is reversed, with instruction to deny the motion for substitution, and to permit Walker to intervene, if he shall so elect, and for a trial and determination of the cause as to the interests of all parties as the same may appear.

*The judgment is reversed.*

*En banc.*

HILL J., and BAILEY, J., not participating.